The People ex rel. Smith agt. Flagg.

---

# COURT OF APPEALS

The People *ex rel.* EDWIN SMITH, Respondents agt. AZARIAH C. FLAGG, Appellant.

The common council of the city of New-York, have original authority to employ on behalf of the city, a *surveyor* to furnish copies of an original map, or to make new surveys, and furnish a new map of the city, or such parts thereof, as may be required.

And where the resolution of the common council calls for a certain number of copies of a certain map, with the "alterations and additions," to that date, and a new survey and map is furnished instead, which are recognized and accepted by the common council, and agreed to be paid for by resolution, it is equivalent to an original request, and creates a just debt for the amount, against the corporation.

The 12th section of the amended charter of 1853, requiring "all work to be done, and all supplies to be furnished for the corporation, involving an expenditure of more than $250, shall be by contract, founded on sealed bids, or on proposals made in compliance with public notice, for the full period of ten days; and all such contracts, when given, shall be given to the lowest bidder, with adequate security," does not apply to services which require in their performance *specific knowledge or professional skill*, such as the services of a lawyer, a physician, or surveyor.

By the amended charter of 1849, § 11, an executive department in the city government was constituted, denominated the "Department of Finance." It was made the duty of this department to settle and adjust all claims whatsoever, and all accounts whatsoever, in which the corporation is concerned as debtor or creditor. The comptroller was ordered to be the chief officer of this depart-

The People ex rel. Smith agt. Flagg.

ment. By § 13 of the amended charter of 1853, an auditing bureau in the finance department was created, with an auditor of accounts as the chief officer. This bureau, it is declared, "shall audit, revise, credit and settle all accounts in which the city is concerned as debtor or creditor." And every claim against the corporation is to be certified from the auditing bureau to the comptroller with the same allowance, and the reasons for such allowance.

Therefore, it is not within the power of the common council to determine that a particular sum is due for services and disbursements, or to require the comptroller to draw his warrant for the payment of such sum.

A city surveyor, employed by the street commissioner to make a survey, shall be paid at the rate of $3.00 per day; and the further sum of $1.00 per day, may be allowed for an assistant, when necessary. (*Ordinance organizing the departments of the city government*, § 229.) By the 10th section of the amended charter, (1853,) it is declared, that "no additional allowance beyond the legal claim for any service, shall ever be allowed." This ordinance and statute take from the common council, the power of making any other allowance.

*Appeal from the Second Judicial District.*

ON the 28th of February, 1855, a resolution of the common council of the city of New-York, was approved by the mayor, directing the street commissioner to furnish each member of the common council, to the mayor's office, and to the chambers of the boards of aldermen and councilmen, *a copy of the map* of wharves and piers of the North and East rivers, as *originally drawn* by Daniel Ewen, city surveyor, and embracing the *alterations* and *additions to date.*

The relator was employed by the street commissioner, in April, 1855, no advertisement having been made for proposals, and no bids received for doing the work.

The relator made a *complete survey* of all the wharves and piers on the North and East rivers.

On the 26th of June, 1856, a resolution was passed by the common council, directing the comptroller of the city of New-York, (which office appellant then held,) to draw his warrant in favor of relator for $1,250, which the appellant refused to do.

The justice sitting at the special term of the supreme court, second district, ordered a peremptory mandamus to issue against Flagg, (the appellant,) and the general term of that court affirmed the order

MONELL, WILLARD and HOWE, *for respondents.*

R. BUSTEED and A. R. LAWRENCE, JR., *for appellant.*

By the court—COMSTOCK, Judge. The resolutions of February 28th, 1855, only called for a certain number of copies of Ewen's map of wharves and piers, with the "alterations and additions" to that date. The relator was directed by the street commissioner to comply with the requirements of that resolution ; but finding that the alterations and additions were so numerous as to render necessary a new survey and map, he proceeded accordingly, and, having completed his work, furnished five hundred lithographed copies to the common council. These were accepted by them, and they passed on the 26th of June, 1856, a resolution, that he be paid for his services, the sum of $1,250. As the case is thus far stated, I see no reason to doubt that the relator is entitled to the compensation for his labor and disbursements.

If the common council had possessed no original authority to incur a debt of this kind, their recognition of the services and of the obligation to pay therefor, would not have charged the corporation. (*Halstead* agt. *Mayor,* 3 *Comst.* 430 ; *Hodges* agt. *City of Buffalo,* 1 *Denio,* 110.) But no doubt is suggested that a surveyor could legally be employed on behalf of the city, either to furnish copies of an original map, or to make new surveys and furnish a new map, exhibiting the streets, squares, wharves, piers, &c. The services in this instance went beyond the original employment, but they were subsequently recognized and agreed to be paid for, in the resolution of June, 1856. This was equivalent to an original request, and created a just debt for same amount against the corporation.

The amended charter of 1853, § 12, (*Laws of* 1853, *p.* 412,) requires that " all work to be done, and all supplies to be furnished for the corporation, involving an expenditure of more than two hundred and fifty dollars, shall be by contract, founded on sealed bids, or on proposals made in compliance with public notice for the full period of ten days ; and all such contracts, when given, shall be given to the lowest bidder,

with adequate security." It is claimed on the part of the appellant, that the services performed by the relator, should have been contracted for with the lowest bidder, pursuant to this requirement of the charter. The language of this provision is certainly somewhat broad; but I am quite well satisfied that it does not include services of the particular kind now in question. In a large sense, the term "work," may include all labor, whether mental or corporeal; but it has also a more restricted sense, which may confine it to the various kinds of manual labor, which may properly be the subject of general compensation, and can be safely awarded to the lowest bidder. It would be an unreasonable and mischievous construction of the statute, to apply it to services which require in their proper performance specific knowledge or professional skill. I do not believe that the services of a lawyer, of a physician, or those upon which the claim in the present case is founded, are embraced within the provision.

There are, however, one or two other objections, which it appears to me, should have been held fatal on the motion for a mandamus. By the amended charter of 1849, § 11 (*Stat. p.* 280,) an executive department in the government of New-York city was constituted, denominated the "department of finance." It was made the duty of this department to settle and adjust all claims whatsoever, and all accounts whatsoever, in which the corporation is concerned as debtor or creditor. The comptroller was ordered to be the chief officer of this department. By § 13 of the amended charter of 1853, an auditing bureau in the finance department was created, with an auditor of accounts as the chief officer. This bureau, it is declared, "shall audit, revise, credit and settle all accounts in which the city is concerned as debtor or creditor." Every claim against the corporation is to be certified from the auditing bureau to the comptroller with the same allowance, and the reasons for such allowance. In awarding the mandamus commanding the comptroller to draw his warrant in favor of the relator for the sum claimed by him, no attention appears to have been given to these provisions of law.

It has been observed, that the resolution of the council recognizing the relator's services were equivalent to an original request that he perform those services, and bound the corporation to pay for them. But if we give any effect to the clauses in the charter which have been quoted, the comptroller could not be compelled to draw his warrant until the claim was audited, according to law. The due employment of the relator by the common council, or their recognition of his services, gave him a just claim against the corporation, and a right to have his account audited in the manner provided. But it was not within the power of the council to determine that a particular sum was due to him for his labor and disbursements, or to require the comptroller to draw his warrant for the payment of such sum. The adjustment of the amount belonged to the auditing bureau, in the department of finance, and if that department or bureau should refuse to audit it, a mandamus would be an appropriate remedy to compel them to do so. Where the claim is thus audited, it is presumed that the comptroller can be compelled by mandamus to draw his warrant for the sum allowed.

The common council appear also to have proceeded in disregard of section 229 of the ordinance organizing the departments of the city government, and of the 10th section of the amended charter of 1853. By that section of the ordinance, it was provided that a city surveyor employed by the street commissioner to make a survey, shall be paid at the rate of three dollars per day, and the further sum of one dollar per day, may be allowed for an assistant, when necessary. By the 10th section of the amended charter, it is declared that " no additional allowance beyond the legal claim for any service, shall ever be allowed." Now, the relator, as the return shows, was a city surveyor, in the surveying bureau. So far, therefore, as his account consisted of services rendered by himself or his assistants, in making the surveys of wharves and piers, the rate of compensation was fixed by the ordinance referred to, and the statute of 1853 absolutely took from the common council, the power of making any other allowance.

The comptroller had a right to require the relator, as he did by his letter of February 2d, 1856, to make a detailed statement, showing the piers and wharves surveyed, and the time occupied in making such survey.

The demurrer to the return of the comptroller to the alternative mandamus, was not well taken. The judgment should be reversed for this reason, and the mandamus denied.

Order accordingly.